## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:21-cv-02122-SKC

SUN WELL SERVICE, INC,

        Plaintiff,

v.

BERKLEY NATIONAL INSURANCE COMPANY,

        Defendant.

---

### ORDER RE: DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT [DKT. 40]

---

While performing work on a North Dakota oil and gas well owned by non-party SM Energy Company, an employee of Plaintiff Sun Well Service, Inc., erroneously dropped objects into the well ("incident") causing a danger which required the cessation of work. [Dkt 47 at ¶¶10-15.] SM Energy was forced to plug and abandon the well as a result. [*See* Dkt. 46-1.] It later sued Plaintiff in Colorado state court based on the acts of Plaintiff's employee.

At the time of the incident, Plaintiff was insured under a General Liability policy from Defendant Berkley National Insurance Company. [Dkt. 47 at ¶¶1, 3.] Before it was sued by SM Energy, Plaintiff initiated a claim under the Policy with Defendant. On April 25, 2018, Defendant notified Plaintiff it did not believe Plaintiff was liable to SM Energy (based on the contract between the two) and there was no

coverage under the Policy because the employee's actions were intentional. [Dkt. 47-2.] Thereafter, Defendant hired non-party Great Plains Claims to interview the employee and investigate the incident. [Dkt. 41-13.]

On May 29, 2019, SM Energy sued Plaintiff in state court in Colorado to recover damages related to the incident. [Dkt. 41-6.] Although SM Energy initially won a default judgment against Plaintiff, the Colorado Court of Appeals vacated the default judgment and SM Energy then filed an Amended Complaint on April 6, 2021 ("underlying litigation"). [Dkt. 9 at ¶¶45-50.]

According to Plaintiff's Complaint in this case, Defendant refused to defend Plaintiff in the underlying litigation and refused to indemnify Plaintiff for the damages it ultimately paid SM Energy to settle the claims. [*See generally* Dkt. 9.] Plaintiff seeks a declaratory judgment and monetary damages based on Defendant's alleged breach of contract, bad faith breach of contract, and unreasonable delay or denial of its insurance claim under Colo. Rev. Stat. §§ 10-3-1115 and -1116. [*Id.*]

Defendant has moved for a determination of law claiming North Dakota law applies to Plaintiff's breach of contract and statutory claims, and for summary judgment in its favor on the statutory claims. [Dkt. 40.] The Court has carefully reviewed the Motion and related briefing, the evidence, the relevant law, and the entire case file. A hearing is unnecessary. For the following reasons, the Motion is DENIED.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "[A] 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)).

Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury, or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248-49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

## ANALYSIS

Defendant contends North Dakota law governs Plaintiff's contract claims, and thus, it also controls Plaintiff's statutory claims. And because North Dakota law has no analog to Colorado's statutory claims for unreasonable delay or denial (Colo. Rev. Stat. §§ 10-3-1115, -1116), Defendant argues it is entitled to judgment in its favor on Plaintiff's Colorado statutory claims.

### A.   Breach of Contract

It is well-settled when making a choice of law determination, federal courts sitting in diversity (as here) apply the choice of law provision of the forum state. *Electrical Distributors, Inc. v. SFR, Inc.*, 166 F.3d 1074, 1083 (10th Cir. 1999). "The choice of law in a given case is not made once for all issues; each issue is to receive separate consideration if it is one that would be resolved differently under the local law rule of two or more of the potentially interested states." *Duong v. State Farm Mut. Auto. Ins. Co.*, No. 21-CV-02187-NYW-NRN, 2022 WL 4386003, at *3 (D. Colo. Sept. 22, 2022) (cleaned up). But when there is no outcome-determinative conflict between multiple bodies of law, "courts do not make choice of law decisions," and the law of the forum state controls. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 946 F. Supp. 861, 866 (D. Colo. 1996) (citing *Eli Lilly & Co. v. Home Ins. Co.*, 764 F.2d 876, 882 (D.C. Cir. 1985)); *see also Sec. Serv. Fed. Credit Union v. First Am. Mortg. Funding, LLC*, 861 F. Supp. 2d 1256, 1264 (D. Colo. 2012).

In its Motion, Defendant relies on *Werden v. Allstate Ins. Co.*, 667 F. Supp. 2d 1238 (D. Colo. 2009), for its contention there is an outcome-determinative conflict of

4

law with respect to Plaintiff's contract and statutory claims. In *Werden*, the plaintiff was in a car accident in Colorado while in the course of her employment. She was insured under an Allstate New York automobile policy, but when the plaintiff submitted bills from her treating providers, Allstate refused to pay. The plaintiff sued Allstate in Colorado state court—which was later removed to federal court—for breach of contract, bad faith breach of an insurance contract, statutory claims under New York and Colorado law, and a demand for uninsured motorist coverage.

In his order granting in part and denying in part Allstate's summary judgment motion, Senior District Judge Babcock first engaged in a choice-of-law analysis and determined New York law applied to the plaintiff's contract claim. Concerning the plaintiff's statutory bad faith claim under Colo. Rev. Stat. § 10-3-1115, Judge Babcock held, "[o]nce it has been determined that the law of a particular state governs the interpretation of a contract, any statutory insurance claims must also be raised under the law of the controlling state." *Werden*, 667 F. Supp. 2d at 1245. Judge Babcock then granted summary judgment in favor of Allstate because New York law did not have a statute like Colorado's. *Id.*

Based on this holding, Defendant seems to contend the inverse of Judge Babcock's holding is also true: if there is an outcome-determinative conflict of law regarding statutory insurance claims, there is necessarily an outcome-determinative dispute regarding what law governs contract interpretation. [Dkt. 46 at pp.1-2.] Defendant argues that because North Dakota does not have a statutory-bad-faith scheme like Colorado's, there is an outcome-determinative conflict of law resulting in

application of North Dakota law to Plaintiff's contract and statutory bad faith claims. [*Id.*]

The Court found no authority where a conflict-of-law regarding statutory remedies controlled the analysis of an otherwise benign question of contract interpretation. And Defendant has provided none. Rather, in *Werden*, there was also an outcome-determinative conflict regarding the law applicable to contract interpretation and the breach of contract claim. Similarly, in *NBH Cap. Fin. v. Scottsdale Indem. Co.*, No. 19-cv-02153-RMR-MEH, 2022 WL 3597118, at *2 (D. Colo. Mar. 30, 2022), District Judge Regina M. Rodriguez found an outcome-determinative conflict regarding the law applicable to the plaintiff's contract claims. After concluding Texas law controlled questions of contract interpretation, Judge Rodriguez then relied on *Werden* to dismiss Plaintiff's statutory claims arising under Colorado law.

In its Reply, Defendant also cites *Price v. Am. Fam. Mut. Ins. Co., S.I.*, No. 18-CV-3209-WJM-STV, 2020 WL 948710, at *4 (D. Colo. Feb. 27, 2020), for its contention there is an outcome determinative conflict regarding Plaintiff's contract claims. But there, although District Judge William J. Martinez listed the outcome-determinative conflicts together, the question of what law applied to the breach of contract claim existed independently of the question regarding what law should apply to the statutory claims. Furthermore, in *Price*, Judge Martinez did not analyze the holding in *Werden* because Plaintiff confessed that if Indiana law applied to her insurance contract it also governed her statutory claims. *Id.* at *8.

6

Consequently, the Court is not persuaded that an outcome-determinative conflict of law regarding Plaintiff's statutory claims necessitates finding an outcome-determinative conflict of law for Plaintiff's contract claims where such a conflict does not otherwise exist.[1] Because Defendant makes no additional arguments regarding an outcome-determinative conflict of law for Plaintiff's contract claim, Defendant has failed to demonstrate an outcome-determinative conflict between North Dakota and Colorado contract law. Thus, the Court need not engage in a choice-of-law analysis concerning Plaintiff's contract claims. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 946 F. Supp. 861, 866 (D. Colo. 1996) ("... Wharf has demonstrated no outcome-determinative conflict between U.S. and Hong Kong law. Unless such a conflict exists, courts do not make choice of law decisions."). Colorado law will apply. *Id.* (applying law of the forum state where no outcome-determinative conflict existed).

## B.    Colo. Rev. Stat. §§ 10-3-1115 and -1116

Under Colorado's statutory bad faith scheme, Colo. Rev. Stat. §§ 10-3-1115 and -1116, a successful Plaintiff may recover two times the covered insurance benefit, attorney fees, and costs when an insurance provider unreasonably delays or denies coverage. Notably here, this claim is treated as a tort under Colorado law. *Sandoval v. Unum Life Ins. Co. of Am.*, 952 F.3d 1233, 1236 (10th Cir. 2020).

---

[1] In *Williams v. Allstate Prop. & Cas. Ins. Co.*, No. 19-CV-03368-REB-KLM, 2020 WL 9432884, at *3 (D. Colo. Sept. 28, 2020), the plaintiff conceded North Carolina law governed the insurance contract. Consequently, Judge Robert E. Blackburn, citing *Werden*, dismissed the plaintiff's statutory bad faith claim brough under Colorado law.

Colorado follows the Restatement (Second) of Conflict of Laws and "applies the law of the state with the most significant relationship to the occurrence and parties." *Boone v. MVM, Inc.*, 572 F.3d 809, 811-12 (10th Cir. 2009) (citing *AE, Inc. v. Goodyear Tire & Rubber Co.,* 168 P.3d 507, 509-10 (Colo. 2007)). For torts, the Restatement provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the [choice-of-law] principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a) the place where the injury occurred,
> >
> > (b) the place where the conduct causing the injury occurred,
> >
> > (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> >
> > (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Law § 145.

## 1. Place Where the Injury Occurred

"Insureds enter into insurance contracts for the financial security obtained by protecting themselves from unforeseen calamities and for peace of mind, rather than to secure commercial advantage." *Goodson v. Am. Standard Ins. Co. of Wisconsin*, 89 P.3d 409, 414 (Colo. 2004) (citations omitted). "[B]ad faith tort liability arises in two contexts: first-party and third-party." *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116,

119 (Colo. 2010). Relevant here, third-party bad faith occurs "when an insurance company acts unreasonably in investigating, defending, or settling a claim brought by a third person against its insured under a liability policy." *Id.* (citation omitted). "The injury in a bad faith claim is the destruction of the insured's peace of mind and trust in the insurer, and the economic hardship that might result from not receiving insurance payments." *Price v. Am. Fam. Mut. Ins. Co., S.I.*, No. 18-cv-3209-WJM-STV, 2020 WL 948710, at *9 (D. Colo. Feb. 27, 2020).

Defendant contends the alleged injury in this case occurred in North Dakota because, in part, the insured risk and the investigation of the incident were in North Dakota. These facts, however, have little bearing on where *Plaintiff's* claimed injuries occurred for purposes of this particular factor.

Defendant also notes Plaintiff accepted liability for SM Energy's damages while it was in North Dakota, and Defendant sent its letter denying indemnification to Plaintiff before it moved to Colorado. To be sure, these facts are relevant to the analysis, but they also occurred prior to the underlying lawsuit filed in Colorado, which is the basis of Plaintiff's claims and claimed injuries in this case. Further, although Defendant may have denied responsibility for indemnification—and destroyed the insured's peace of mind—while Plaintiff was in North Dakota, Plaintiff's economic damages occurred with the monetary settlement of the

underlying lawsuit, which Plaintiff incurred and paid in Colorado.[2] In addition, the Court notes these facts are largely related only to Plaintiff's claim for failure to indemnify, not its claim for failure to defend.[3]

Under Colorado law, an insurer's duty to defend an insured (or additional insured) is distinct from the duty to indemnify. *Hecla Mining Co. v. N.H. Ins. Co.*, 811 P.2d 1083, 1086 n. 5 (Colo. 1991). "The duty to defend concerns an insurance company's duty to affirmatively defend its insured *against pending claims*." *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo.2003) (quotation omitted) (emphasis added). The duty to indemnify, however,

> relates to the insurer's duty to satisfy a judgment entered against the insured. Because the duty to defend encompasses any potential claims raised by the facts and the duty to indemnify relates to the actual liability imposed, [the Colorado Supreme Court] has considered the duty to defend to be a broader concept than the duty to indemnify.

*United Fire & Cas. Co. v. Boulder Plaza Residential, LLC*, 633 F.3d 951, 956–57 (10th Cir. 2011) (quoting *Cyprus Amax Minerals Co.*, 74 P.3d at 299).

In this case, the duty to defend arose after Plaintiff moved to Colorado in 2018 and with the commencement of the underlying lawsuit in Colorado in May 2019. Plaintiff hired Colorado attorneys to represent it in that action, and the case was ultimately settled following two mediations in Colorado. Thus, the injury resulting

---

[2] The same can also be said with respect to Plaintiff's acceptance of liability; it predated the lawsuit. The final amount was not decided or paid until the parties to the underlying suit were all in Colorado.

[3] Defendant denies it failed to provide a defense, but this argument goes to the merits of the claim, which is not an issue before the Court on this Motion. The only question here is which law shall govern the merits.

from an alleged failure to defend occurred in Colorado. Likewise, to the extent the duty to indemnify "relates to the actual liability imposed," that injury also occurred in Colorado with finalization of the parties' settlement in the underlying lawsuit. *United Fire & Cas. Co.*, 633 F.3d 951, 956–57. This factor weighs in favor of applying Colorado law.

### 2. Place Where the Conduct Causing the Injury Occurred

Though both parties contend this factor supports their respective position, their arguments are not helpful to the analysis—Plaintiff's argument focuses primarily on where *it* was located at the time of the injury, while Defendant focuses on where the injury occurred. The relevant question, however, is where Defendant was when it made the decision(s) to deny Plaintiff indemnification and a defense of the underlying lawsuit.

Defendant is an Iowa corporation with its principal place of business in Iowa. [Dkt. 47 at ¶4.] Plaintiff's claims adjuster, David Archambault, was in Houston, Texas, when he sent the initial letter denying indemnification. [*Id.* at ¶36. *See also* Dkt. 47-2 at pp.5-9.] Consequently, it would appear the place where the conduct causing the injury occurred was Iowa or Texas. Either way, this factor has little bearing on the question before the Court when considering all other factors.

### 3. Domicile, Residence, Nationality, Place of Incorporation and Place of Business of the Parties

Given the undisputed fact Defendant is incorporated and does its primary business in Iowa, which does not weigh in favor of applying North Dakota law, the primary focus is Plaintiff's domicile, residence, place of incorporation, and place of

11

business. According to Defendant's undisputed evidence, Plaintiff is incorporated in North Dakota and is not registered with the Colorado Secretary of State to do business in Colorado. [Dkt. 47 at ¶7.] Defendant also notes its letter denying indemnification and other pre-lawsuit communications were sent to Plaintiff in North Dakota. [*Id.* at ¶41.]

However, Plaintiff's undisputed evidence demonstrates that as of October 2018—predating the underlying lawsuit and settlement forming the basis of this case—Plaintiff moved its domicile, residence, and place of business to Colorado. [Dkt. 45-1 at ¶¶9-12.] Although Defendant challenges this evidence as self-serving, the Tenth Circuit has recognized "virtually any party's testimony can be considered 'self-serving.'" *Greer v. City of Wichita*, 943 F.3d 1320, 1325 (10th Cir. 2019). Without additional conclusive evidence, "self-serving testimony is competent to oppose summary judgment." *Vail Summit Resorts, Inc. v. Zip-Flyer, LLC*, No. 18-cv-01763-MEH, 2020 WL 4287196, at *6 (D. Colo. July 27, 2020) (quoting *Greer*, 943 F.3d at 1325). "[H]owever self-serving and uncorroborated plaintiff's testimony may be, it is perfectly good evidence" that Plaintiff moved to Colorado and now conducts business from this state. *Sirovatka v. Budget Control Servs., Inc.*, No. 10-cv-03028-PAB-CBS, 2012 WL 602658, at *3 (D. Colo. Feb. 24, 2012) (quoting *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 636 (7th Cir.2011)).

On balance, the Court concludes this factor weighs in favor of Plaintiff.

### 4. Place Where the Relationship is Centered

For bad faith claims, "the 'center' of the relationship must be judged with respect to the parties' locations during the adjustment of the claim. That relationship—from reporting of the claim forward—is the basis of bad faith." *Price v. Am. Family Mut. Ins. Co., S.I.*, No. 18-CV-3209-WJM-STV, 2020 WL 948710, at *9 (D. Colo. Feb. 27, 2020).

At the time Plaintiff reported the claim to Defendant, it is undisputed Plaintiff was primarily located in North Dakota. It is also undisputed Defendant's investigation occurred at the site in North Dakota, and Defendant sent its initial letter denying indemnification to Plaintiff in North Dakota. Were the Court to accept Defendant's argument and end the inquiry there, North Dakota would indeed be the center of the parties' relationship. But as discussed in the foregoing, these facts are primarily related to the alleged failure to indemnify, not defend, when considering only the destruction of the insured's peace of mind and trust in the insurer when Defendant denied indemnification.

"The actual liability of the insured to the claimant is not the criterion which places upon the insurance company the obligation to defend. Rather, the obligation to defend *arises from allegations in the complaint*, which if sustained, would impose a liability covered by the policy." *United Fire & Cas. Co.*, LLC, 633 F.3d at 957 (emphasis added). Although there are little more than vagaries from either party

about what unfolded (appeals, discussions between the parties, etc.[4]) after the denial letter, it is undisputed the duty to defend did not arise until the underlying lawsuit was filed in Colorado. Plaintiff's evidence establishes, at that time, it already relocated to Colorado. Thus, the duty to defend centers the parties' relationship in Colorado. And the duty to indemnify similarly does as well. As mentioned above, to the extent the duty to indemnify "relates to the actual liability imposed," that injury also occurred in Colorado with finalization of the parties' settlement in the underlying lawsuit. *United Fire & Cas. Co.*, 633 F.3d 951, 956–57.

On balance, this factor favors application of Colorado law.

### 5. Choice-of-Law Principles

The Court must also consider the parties' relevant contacts in light of the Restatement, § 6 factors, which are: (a) the needs of the interstate and international systems; (b) the relevant policies of the forum; (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; (d) the protection of justified expectations; (e) the basic policies underlying the particular field of law; (f) certainty, predictability and uniformity of result; and (g) ease in the determination and application of the law to be applied. Restatement (Second) of Conflict of Law § 6(2).

Like Judge Martinez in *Price v. Am. Fam. Mut. Ins. Co., S.I.*, the Court finds these factors to be "broad and vague, and thus [they] provide little direction." 2020

---

[4] The Court notes the Great Plains Claims, Inc., investigation took place *after* Defendant sent the letter denying indemnification. But there is no indication of what Defendant did with this investigatory information.

14

WL 948710, at *10. Having considered them nonetheless, the Court makes the following observations.

Defendant's strongest argument would be under the "protection of justified expectations" prong (§6(2)(d))—specifically, that Defendant had a justified expectation North Dakota law would apply to any claims related to a liability policy issued to a North Dakota insured whose primary business is in North Dakota. But nowhere does Defendant make this explicit. Defendant instead submits evidence it conducted risk surveys and evaluated safety operations in North Dakota, but there are no affidavits or other competent evidence to support Defendant had a justifiable expectation that only North Dakota law would apply to the Policy.

That argument is further undercut by the fact the Policy does not contain a choice-of-law provision and it covers additional insureds who do, in fact, conduct business in Colorado. Defendant argues the places of business of other companies is not relevant. This would be more persuasive, however, if Defendant had issued individual policies to each company. But here, there is a *single* Policy with five different named insureds and no indication regarding Defendant's expectation of what law(s) applies to each. Thus, it is persuasive that at least one insured under the Policy conducts business in Colorado.

Moreover, Plaintiff's yet unchallenged evidence demonstrates, as of October 2018, it was a resident of Colorado.[5] Thus, at least by the time the underlying lawsuit

---

[5] Defendant has not presented any evidence to create a disputed issue of fact, instead arguing it does not yet have sufficient information to admit or challenge when

began and the duty to defend arose, Defendant would have known its insured (the Plaintiff) was a Colorado resident facing a Colorado lawsuit, and therefore, it "would be at least arguably subject to Colorado law regarding adjustment of insurance claims." *Price*, 2020 WL 948710, at *10.

"It promotes certainty, predictability, and uniformity of result to require an insurance company to adjust a Colorado resident's claim arising from [a lawsuit in] Colorado according to Colorado's standards." *Id.* Based on the above-analysis, the Court finds choice-of-law principles warrant application of Colorado law to Plaintiff's statutory claims.

*       *       *

Before the Court is "free to abandon the default presumption that [Colorado] law controls, [Defendant] had to make a clear showing that another state's law should apply." *Howard v. Ferrellgas Partners*, L.P., 748 F.3d 975, 983 (10th Cir. 2014). Based on the foregoing discussion, the Court concludes, at this stage of the proceedings, it has not done so. Colorado law shall apply to Plaintiff's contract claim and Defendant's request for summary judgment on Plaintiff's statutory claims is DENIED.

DATED: January 12, 2022.

---

Plaintiff moved to Colorado. This suggests to the Court, the Motion was filed prematurely.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge